## Expenditure of Liquid Fuels Tax Fund

ANNE X. ALPERN, Attorney General, and DAVID E. ABRAHAMSEN, Deputy Attorney General, June 8, 1961. —You have requested our advice regarding the propriety of certain expenditures of liquid fuels tax funds received by counties pursuant to the provisions of the Liquid Fuels Tax Act of May 21, 1931, P. L. 149, as amended, 72 PS §2611($j$). The specific uses you question are the expenditure of such funds by the county as a contribution to the Commonwealth toward property damages necessarily arising from contemplated changes in existing widths, lines and locations of State highways and the payments by a county from liquid fuels tax funds of the salary of a traffic and highway engineer. In the latter case, the county itself has no highways and contemplates the employment of such engineer in advising local municipalities within the county on traffic flow problems and the elimination thereof.

The Liquid Fuels Tax Act of May 31, 1931, provides that:

"Moneys so received and deposited shall be used only for the purpose of construction, reconstruction, maintenance, and repair of roads, highways and bridges, including the payment of property damage, now due or hereafter to become due, occasioned by or the relocation or construction of highways and bridges, and for the payment of interest and sinking fund charges on bonds issued or used for highways and bridge purposes, or on so much of any bonds as have been used for such purposes, and all payments made by any county, either directly or indirectly, prior to the first day of January, one thousand nine hundred and forty-six, for any or all such purposes are hereby validated."

Subsection (b) of this section further provides:

"The county commissioners may allocate and apportion moneys from the county liquid fuels tax fund to the political subdivisions within the county. . . ."

The sole issue raised by your first question, regarding contribution to the State for property damages, is whether or not there is any provision of law which bars expenditures by the county on road costs other than its own. That is, whether the above language is to be read so as to restrict the county to use liquid fuels tax funds for construction, reconstruction, maintenance and repair of only *county* roads, highways and bridges. Section 10 of the Liquid Fuels Tax Act of May 21, 1931, does not limit expenditures *only* to county roads; it limits the expenditure to certain road purposes, including payment of property damages. There is no warrant in the law, nor in principle, for a limitation on county use of liquid fuel funds which would prohibit such contributions to the State Highway Department. Since the county, necessarily, could use the funds to construct the road by itself or to assist

political subdivisions within the county to construct such roads it would seem, logically, to follow that the funds can be used to assist the parent Commonwealth to construct or reconstruct roads *located within the county*.

Whether or not a county may spend liquid fuels tax funds to pay the salary of a highway and traffic engineer depends upon the interpretation given the words "construction, reconstruction, maintenance or repair of roads." A narrow and literal reading of such words would limit the use of the funds, virtually, to the purchase and pouring of concrete. Such construction was rejected by the then Attorney General, Thomas D. McBride, in official opinion no. 45 of 1957, Utilization of Liquid Fuels Tax, 14 D. & C. 2d 169. In that opinion, Attorney General McBride advised that expenditures of such funds to defray the cost of a transportation study preliminary to the determination of when, where and what type of new highways are to be constructed in and near the county was proper. That opinion noted at page 173:

". . . It would be wholly unrealistic to say that the construction of a highway means nothing more than the pouring of concrete. Roads cannot be constructed haphazardly. Modern highway construction requires careful, long-range planning; highway construction must be well conceived to be of enduring usefulness. Casual, chance or uncoordinated expansion of facilities is wasteful because such expansion cannot adequately keep pace with or provide for future requirements."

By the same token, it would be unrealistic to suggest that once constructed, save for maintenance by way of repairs, highways could be safely ignored. Proper utilization of modern highways to obtain the maximum benefits to the travelling public under often congested conditions requires careful study by trained

personnel. Such continuing study is as necessary to the maintenance of the highways in first class operating condition as the repairing of breaks on the surface and, of course, is a necessary preliminary to any decision to construct additional roads to relieve congestion.

Whether or not new roads need be constructed will also depend upon what additional burden existing highways can be made to bear by efficient traffic engineering. Thus, both construction and maintenance of highways can and does require traffic engineering services.

In this connection, it should be noted that the Federal-Aid Highway Act of August 27, 1958, 72 Stat. 894, 23 USCA §109, provides that Federal approval of plans and concomitant Federal aid to States cannot be obtained unless such projects provide facilities:

". . . (1) that will adequately meet the existing and probable future traffic needs and conditions in a manner conducive to safety, durability, and economy of maintenance; (2) that will be designed and constructed in accordance with standards best suited to accomplish the foregoing objectives and to conform to the particular needs of each locality.

"(b) The geometric and construction standards to be adopted for the Interstate System shall be those approved by the Secretary in cooperation with the State highway departments. Such standards shall be adequate to accommodate the types and volumes of traffic forecast for the year 1975. The right-of-way width of the Interstate System shall be adequate to permit construction of projects on the Interstate System up to such standards . . .

"(d) On any highway project in which Federal funds hereafter participate, or on any such project constructed since December 20, 1944, the location, form and character of informational, regulatory and warning signs, curb and pavement or other markings,

and traffic signals installed or placed by any public authority or other agency, shall be subject to the approval of the State highway department with the concurrence of the Secretary, who is directed to concur only in such installations as will promote the safe and efficient utilization of the highways."

Obviously, these conditions cannot be met without traffic engineering studies. Since Highway Department expenditures of liquid fuels tax funds are subject, by constitutional limitation (article 9, sec. 18) to the same restrictions as are imposed by the Liquid Fuels Tax Act of May 21, 1931, the Commonwealth would be unable to qualify for Federal aid were a narrowly rigid construction given to the words construction and maintenance.

Nor can it properly be objected that an engineer might be employed to deal only with county roads and bridges even though the county in question has none. It is at once apparent that many municipal subdivisions within the county might be in need of such engineering services, but on less than a full-time basis. The obvious solution is for the county to provide such services. The Liquid Fuels Tax Act, as noted, permits the county to allocate funds to the municipalities. There is no provision in the act which would prohibit making available service to these municipal subdivisions, rather than the funds to purchase them, at least in the case of services which, as a practical matter, cannot be purchased individually by the municipalities.

It should be noted that this opinion in no way conflicts with official opinion no. 235, dated February 16, 1961, County Use of Liquid Fuels Tax Fund, 23 D. & C. 2d 426, which held that counties might not spend liquid fuel tax funds to pay viewers' costs and fees incurred in assessing damages to owners of land taken for county road purposes. That holding was based

upon the provision of The County Code of August 9, 1955, P. L. 323, 16 PS §§1101-1106 and §§1623-1624, making viewers, in effect, public officers whose salaries are to be paid out of the county treasury.

We are of the opinion and you are, therefore, advised that the expenditure by a county of liquid fuels tax funds obtained pursuant to section 10 of the Liquid Fuels Tax Act of May 21, 1931, P. L. 149, for the salary of a traffic engineer, or to partially reimburse the Commonwealth for the costs to the Commonwealth of property damages incurred in relocating State highways located within the county, is proper.